[No. 498-1.    Division One—Panel 1.    October 19, 1970.]

THE STATE OF WASHINGTON, *Petitioner*, v. HUGH THOMAS HATCHER, *Respondent*.

*Charles O. Carroll, Prosecuting Attorney*, and *James E. Anderson, Deputy*, for petitioner.

*Mary Fung Koehler*, for respondent (appointed counsel for appeal).

*Edmund J. Wood,* amicus curiae.

JAMES, C. J.—Hugh Hatcher was charged by information with the unlawful possession of heroin. We review the ruling of the trial judge suppressing the evidence obtained when Hatcher was arrested.

A police detective obtained a search warrant upon a showing that a reliable informer had told him that he had "seen large quantities of heroin being cut and bindled in the living room" of the apartment described in the search warrant. On the same day seven or eight police officers went to the apartment to execute the warrant.

Through a small window in the front door of the apartment the officers were able to see into the living room. They observed Hatcher seated on a sofa. He seemed to be asleep. Another man was observed seated on a chair in the living room, and he appeared to be shaving, scraping, or picking one of his legs with a knife. Upon first observing this man, one of the officers thought that he might have a syringe in his hand for the purpose of injecting a narcotic drug. However, a more careful observation disclosed that this was not the fact. A woman was seen sitting on the floor engrossed with a jigsaw puzzle. No narcotics were observed.

Without a knock or other warning, the police officers broke in the front door and promptly took all three of the occupants into custody. However, only Hatcher was placed under arrest.

As the officers approached, Hatcher attempted to swallow a small balloon. One of the officers prevented him from doing so. Hatcher had two balloons on his person, and another was found on the floor near the place where he had been sitting. All three balloons contained heroin. Hatcher later stated that all three belonged to him.

One of the officers, a member of the narcotics squad for a year, recognized Hatcher as a person he knew to be involved with drugs. Hatcher did not reside in the apartment. He testified that he was visiting friends.

No other drugs were found on the persons of the three occupants of the apartment or in the apartment itself.

The officers testified that it is the practice of the Seattle Police Department to force the doors of premises without knocking or giving any other warning when executing warrants to search for narcotic drugs. The officers testified that the reason for the policy is the fact that drugs such as heroin are usually kept in small balloons about the size of a pea. The tiny balloons can be, and frequently are, readily disposed of by swallowing or by flushing them down a drain.

The state, Hatcher, and the amicus curiae all agree with the trial judge that the case of *State v. Young,* 76 Wn.2d 212, 455 P.2d 595 (1969) enunciates the policy that should govern the disposition of this case. We agree.

In *Young* the officers were, as here, armed with a warrant to search for suspected narcotics. The circumstances of the entry in *Young* were as follows:

> One group of officers went to the front door, the other to the rear door. One of the officers at the rear knocked and called out, "Police" loudly enough to be heard by the officers at the front door. This announcement was followed by screaming, yelling, and the sound of the occupants scurrying and running throughout the house. Within seconds of announcing themselves, officers broke through both the front and rear doors simultaneously. Upon entry, the officers observed defendant and certain occupants of the house running. One witness testified, "Well, when they [the police] came through the door, all I remember is everybody ended up in the bathroom."
>
> This race for the bathroom ended with the police seizing several small rubber balloons containing heroin. One was found on the floor; another in the bathtub; others were retrieved from the commode just as they were about to be flushed away. They were introduced into evidence.

*State v. Young, supra* at 213.

The defendant's contention in *Young* was that the evidence should be suppressed because the "break-in" entry was illegal. "Although the police officers identified them-

selves, they did not state their purpose and were not refused admittance before making a forcible entry." *State v. Young, supra* at 214.

██ The court in *Young*, relying upon *Ker v. California,* 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963), declared the rule in Washington to be that

> when officers come armed with a valid search warrant, forcible entry without announcement of identity and purpose and a demand for admittance *may* be justified when exigent and necessitous circumstances exist, as in the instant case. Were this not the rule, the evidence would have been destroyed and the search frustrated.

(Italics in original.) *State v. Young, supra* at 217.

The circumstances in *Young* were held to be of such an "exigent and necessitous" nature that the warrant was served lawfully even though the officers did not announce their purpose and wait for a response.

> It is manifest that the constitutions and statutes require that entry to make an arrest or search must be lawful. In most cases, lawful entry is conditioned upon announcement of identity and purpose, and a demand for admittance. On the other hand, however, the conditions cannot be rigid and inflexible or they become an empty formality. The conditions are part of a criteria of reasonableness and subject to certain exceptions generally recognized.

*State v. Young, supra* at 215.

The exigent and necessitous circumstances in *Young* were the unambiguous sounds from within the premises which were precipitated by the announcement that the police were at the door. Support for the conclusion that such circumstances justify an exception to the basic constitutional guarantee of privacy and security in the home is found in *Ker v. California, supra.* The court in *Ker* approved an exception to the knock and announce rule

> where those within, made aware of the presence of someone outside (because, for example, there has been a knock at the door), are then engaged in activity which justifies the officers in the belief that an escape or the destruction of evidence is being attempted.

*Ker v. California, supra* at 47.

In his oral ruling the trial judge analyzed *State v. Young, supra,* and its applicability to the search which preceded Hatcher's arrest.

Now further on that same page [*State v. Young, supra* at 215] the Court says this: "Toilets have been used so frequently to dispose of narcotics that police officers who are at the door of a place where they have reason to believe that narcotics are present, act reasonably in forcing their way in when the noise within leads them to believe that the evidence they seek is about to be destroyed."

Now, as I interpret the Young case, it does not justify an unannounced break-in in all narcotics cases. In our case here at bar the police were able to observe the activities of the occupants prior to their entry, and nothing they observed indicated that narcotics were being used or handled. Coupled with this is the fact that the police were acting upon the belief that large quantities of heroin were being cut and bindled on the premises.

Now this in itself belies the supposition that the evidence could quickly be flushed away. Further, since the police were able to see the occupants, they could have determined by simple observation what the reaction to announcement of their presence would be.

Now, I think that it behooves the Courts to protect—in fact, guard—the constitutional rights of individuals to be secure in their persons and houses from unreasonable searches.

Thus, I feel that the rule of reasonableness and necessity set out in the Young case is not to be extended, but is rather to be confined to the type of exigent circumstances described in that case. Those circumstances are not present here.

The state asks us to rule that the exigent and necessitous circumstances in this case were, in addition to the perishable nature of the evidence, that the officers saw a person in the living room who "was known to them for his involvement in the Seattle drug situation" and that the officers had no way of knowing how many other people might have been present in other rooms of the apartment.

But in *Young* "the officers were armed with a valid

search warrant. Illegal narcotics were the articles sought and the place to be searched was *the residence of a well known suspect.*" (Italics ours.) *State v. Young, supra* at 216. And in *Young* the officers had no opportunity to observe any part of the interior of the premises. They had no idea how many people were present in any of the rooms of the premises. Nevertheless, the officers knocked, identified themselves, and stated their purpose before the exigent circumstances, the unambiguous sounds of evidence-destroying activity, prompted them to break in.

Public concern about the traffic in narcotics makes judicial approval of the blanket no-knock search policy of the Seattle Police Department very tempting. But the protective constitutional moat[1] which surrounds every man's home—his castle—may not be indiscriminately drained either by police policy or judicial fiat.

> This Constitution, . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the Constitution or laws of any state to the contrary notwithstanding.

U.S. Const. art. 6.

Implicit in the Fourth Amendment's protection from unreasonable searches and seizures is its recognition of individual freedom. That safeguard has been declared to be "as of the very essence of constitutional liberty" the guaranty of which "is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen . . . ." *Gouled v. United States,* 255 U.S. 298, 304 (1921); cf. *Powell v. Alabama,* 287 U.S. 45, 65-68 (1932). While the language of the Amendment is "general," it "forbids every search that is unreasonable; *it protects all, those suspected or known to be offenders* as well as the innocent, and unquestionably extends to the premises where the search was made . . . ." *Go-Bart Importing Co. v. United States,* 282 U.S. 344, 357 (1931). Mr. Justice Butler there stated for the Court that

---

[1] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, . . . ." U.S. Const. amend. 4.

"No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Const. art. 1, § 7.

"[t]he Amendment is to be liberally construed and all owe the duty of vigilance for its effective enforcement lest there shall be impairment of the rights for the protection of which it was adopted." *Ibid.* He also recognized that "[t]here is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances." *Ibid.;* see *United States v. Rabinowitz,* 339 U.S. 56, 63 (1950); *Rios v. United States,* 364 U.S. 253, 255 (1960).

(Italics ours.) *Ker v. California, supra* at 32. The protective constitutional moat may be bridged only in those instances where police officers have credible grounds reasonably to believe that the execution of the search warrant would be fruitless without an unannounced entry. As stated in *State v. Young, supra* at 217,

> To require strict compliance with a "knock and wait" rule in the execution of search warrants, no matter what the circumstances, would hamper the orderly enforcement of criminal law.

The Supreme Court of California was asked to approve a blanket no-knock search and seizure policy for drugs in *People v. Gastelo,* 67 Cal. 2d 586, 588, 63 Cal. Rptr. 10, 432 P.2d 706 (1967):

> The Attorney General contends that unannounced forcible entry to execute a search warrant is always reasonable in narcotics cases, on the ground that narcotics violators normally are on the alert to destroy the easily disposable evidence quickly at the first sign of an officer's presence.

> We do not agree with this contention. Neither this court nor the United States Supreme Court has held that unannounced forcible entries may be authorized by a blanket rule based on the type of crime or evidence involved. . . .

> . . .

> Under the Fourth Amendment, a specific showing must always be made to justify any kind of police action tending to disturb the security of the people in their homes. Unannounced forcible entry is in itself a serious disturbance of that security and cannot be justified on a blanket basis. Otherwise the constitutional test of reasonableness

would turn only on practical expediency, and the amendment's primary safeguard—the requirement of particularity—would be lost. Just as the police must have sufficiently particular reason to enter at all, so must they have some particular reason to enter in the manner chosen.

Although *Young* does not expressly reject the blanket search policy, it does, as does *Gastelo*, require some unambiguous act or necessitous circumstance as a condition precedent to an unannounced breaking into a private residence for the avowed purpose of preventing the destruction of evidence.

The trial judge's determination that the warrant was unlawfully executed is supported by the facts and circumstances of the case.

> [T]he reasonableness of a search is in the first instance a substantive determination to be made by the trial court from the facts and circumstances of the case and in the light of the "fundamental criteria" laid down by the Fourth Amendment and in opinions of this Court applying that Amendment. Findings of reasonableness, of course, are respected only insofar as consistent with federal constitutional guarantees.

*Ker v. California, supra* at 33. Had the police officers knocked and announced the purpose of their visit, they could have seen immediately the reactions of the persons present in the apartment. If their reactions suggested that they intended to dispose of evidence, the officers could have forced their way into the apartment without any further compliance with the knock and announce rule. Since the officers were able to see into the apartment, they had an unusual opportunity to discover immediately and unambiguously the manner in which those present in the apartment chose to react to the announced presence of the law. We are unable to conclude that the method adopted by the police, in the unusual circumstances of this case, significantly increased the chances that they would secure the evidence before it could be destroyed. And compliance with the knock and announce rule would, of course, have afforded the oc-

cupants of the apartment an opportunity to avoid entirely the type of violent intrusion into their privacy that resulted in this case. At a minimum, we cannot conclude that the trial judge improperly evaluated the evidence when he determined that the facts and circumstances of the case did not justify ignoring the requirement the Fourth Amendment imposes in all but "exigent and necessitous circumstances . . ." *State v. Young, supra* at 217.

Since the warrant was executed in a manner violative of the Fourth Amendment, the order suppressing the evidence taken in the search is affirmed.

FARRIS and SWANSON, JJ., concur.