Cipriano D. **ALONZO,** Defendant and Appellant,

v.

**UNITED STATES** of America, Plaintiff and Appellee.

No. 25920.

United States Court of Appeals, Ninth Circuit.

March 9, 1971.

---

6. C.R.S. (1963) § 155-3-401(1).

Spencer W. Strellis (argued), of Golde, Strellis & Hall, Oakland, Cal., for defendant and appellant.

John G. Milano (argued), Asst. U. S. Atty., James L. Browning, Jr., U. S. Atty., Paul G. Sloan, Asst. U. S. Atty., San Francisco, Cal., for plaintiff and appellee.

Before KOELSCH and TRASK, Circuit Judges, and BYRNE,* District Judge.

BYRNE, District Judge:

The appellant Alonzo, James Jackson and Dorothy Cox were indicted for violation of the federal narcotics laws. They were tried and convicted by a jury. Only Alonzo's conviction of the one count with which he was charged pursuant to § 174 Title 21 U.S.C., is relevant to this appeal.

On September 18, 1968, George Heard, an undercover narcotics agent, met James Jackson at Jackson's residence and purchased an ounce of heroin for which he paid $400.00. A week later he made a similar purchase.

* Honorable William M. Byrne, United States District Judge, Los Angeles, California, sitting by designation.

Heard telephoned Jackson at his apartment on October 2, 1968, and asked if he could get "six pieces". Jackson stated that "his man was out of town", but that he could supply Heard with a portion of the desired amount and he "would get the other later". Heard rejected this arrangement, stating that he wanted the entire amount at one time and that he would contact Jackson in a few days.

On October 4, 1968, Heard again called Jackson who told him his "man" was back, that he was on his way over and would be there by the time Heard arrived. When Heard arrived at Jackson's apartment, he was told by Jackson that his "man" would bring the drugs over, since he was a short distance away and that he could get him any amount. About 11:35 A.M. Jackson answered the phone and spoke to a man he identified as "Pete" and asked him to bring "the six pieces". Shortly thereafter appellant arrived at Jackson's apartment and was introduced to Heard as "Pete". "Pete" told Jackson that he had not brought "the six pieces" up to the apartment because "he didn't like the way it looked outside". At appellant's suggestion, the men decided to go to Alonzo's house and complete the transaction there. Appellant and Jackson drove to the former's house together; Heard followed in his own car.

When the men arrived at Alonzo's house, they proceeded to the kitchen where appellant requested the "package" from Jackson who removed a brown bag from his coat pocket and handed it to appellant. Alonzo took a piece of newspaper and spread it out on the table, removed two rubber balloons from the brown bag and emptied the heroin from the balloons onto the newspaper. He then proceeded to mix the heroin with milk sugar, commenting that the heroin had never been cut before.

At this point, Heard left the room and telephoned the operator at the California Bureau of Narcotics Enforcement. Heard told the operator to make radio contact with agents who had placed Alonzo's house under surveillance and tell them that he "had the evidence inside" and that arrests should be made.

Approximately three minutes after making this telephone call, the agent "heard knocking and voices at the front of the house, and the officers entered and placed them both under arrest".

The first contention of error is that the entry into the premises and the seizure of the heroin were unlawful and therefore the introduction of the narcotics seized by the agents should have been suppressed.

California Agent Van Raam received the radio communication which had been instigated by Heard. Immediately after receiving this information Van Raam and the other officers congregated in front of appellant's house. As they had anticipated making the arrest at Jackson's home, they obviously did not have a warrant to search Alonzo's house.

The entry and the arrest were made by State narcotic officers and members of the San Francisco Police Department. Agent Elsberg knocked at the door while Officer Morrow of the San Francisco Police Department yelled "Police Officers, we are here on a narcotic raid." The door remained closed, and Morrow testified he heard running and barking dogs. He then ordered Elsberg to kick the door in. A period of 15 to 20 seconds had elapsed from Elsberg's initial knock.

Morrow testified that one of the factors which led to the decision to forcibly enter appellant's residence was his concern for Heard's safety. The officer attributed his concern to information given to him that Alonzo was Jackson's "source" and that "he was generally armed". His concern was also due to the barking of Alonzo's Doberman pinschers and the fact that Heard did not have any money on his person.

There can be no dispute as to the existence of probable cause for the making of the arrests. The only question relates to whether the arrests were lawfully executed. Heard was a federal nar-

cotics agent, but the arrest of Alonzo was made by a state officer who was authorized to make such arrest by Section 844 of the Penal Code of the State of California.[1]

This Penal Code Section was construed by the Supreme Court of the State of California in People v. Maddox, 46 Cal.2d 301, 294 P.2d 6, cert. den. 352 U.S. 858, 77 S.Ct. 81, 1 L.Ed.2d 65 (1956). In that case, the arrest was made in a private dwelling without a warrant by a state officer who had reasonable grounds for believing that the narcotic laws were being violated. The officer sought entrance to the home by knocking. He then kicked open the door and arrested the defendant. The court stated:

> " * * * since the demand and explanation requirements of section 844 are a codification of the common law, they may reasonably be interpreted as limited by the common law rules that compliance is not required if the officer's peril would have been increased or the arrest frustrated had he demanded entrance and stated his purpose. * * * We conclude therefore that when there is reasonable cause to make an arrest and search and the facts known to him before his entry are not inconsistent with a good faith belief on the part of the officer that compliance with section 844 is excused, his failure to comply with the formal requirements of that section does not justify the exclusion of the evidence he obtains."

See also, Williams v. United States, 9 Cir., 273 F.2d 781 (1959).

■ In the ordinary case officers might be expected to wait more than 15 to 20 seconds after demanding admittance, but under the circumstances which existed here, including the perilous position of Agent Heard, it was of paramount importance that the entry be made as quickly as possible. The district court Judge properly denied the motion to suppress the evidence.

■ Appellant asserts that the trial court incorrectly instructed the jury regarding the presumption provided in 21 U.S.C. § 174.[2] According to Alonzo, "The instructions left the impression that once possession was proved beyond a reasonable doubt, conviction should follow." The carefully selected portion of the instruction the appellant has asked this court to consider does not accurately portray Judge Layton's instructions. Not only did the court preface its instruction relating to the statutory presumption by spelling out the requirements "in order to establish the offense", but it informed the jury that the presumption "does not change the fundamental rule that a defendant is presumed to be innocent until the government has met its burden of proving beyond a reasonable doubt every essential element of the offense charged against him." These instructions are virtually identical with those approved by this court in United States v. Parker, 428 F.2d 488 (C.A. 9, 1970).

Affirmed.

---

1. California Penal Code, Section 844 provides:

"To make an arrest, a private person, if the offense be a felony, and in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

2. 21 U.S.C. § 174 provides the following presumption:

" * * * Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."