[No. 1221-2.     Division Two.     March 11, 1974.]

THE STATE OF WASHINGTON, *Petitioner*, v. JAMES JOHN NEFF, *Respondent.*

*John C. Merkel, Prosecuting Attorney,* and *C. Danny Clem, Deputy,* for petitioner.

*William H. Fraser,* for respondent.

ARMSTRONG, J.—In this writ of certiorari proceeding the state contends that the trial court erred in suppressing evidence of the possession of controlled substances in violation of RCW 69.50.401 (c). We agree.

The suppression of evidence was based upon the testimony of two Bremerton police officers assigned to narcotics and controlled substances investigation and one detective from the Kitsap County deputy sheriff's office.

On the evening of July 7, 1973, an informant approached Officer John Stonehouse and related to him that a man called "Smiley," who drove a blue Cougar with California license plates bearing the number 306-EZW, was in possession of cocaine and marijuana. The informant stated that on the previous night Smiley had picked him up while he was hitchhiking and had taken him to Smiley's room at the Westgage Motel. There they "snorted" cocaine and smoked some "Acapulco Gold" marijuana, which the informant stated had been obtained from a supply in a bedroom closet of the motel unit. The informant related that another quantity of controlled substances was being brought in from California to arrive in the near future.

The informant had proven reliable on one other occasion with Officer Stonehouse, and had given reliable information to other officers on three occasions resulting in arrests and pleas of guilty.

Later that night the informant advised Officer Stonehouse and Officer Hamrick that the suspect Smiley would be at the Peedle Weezer Tavern. At approximately 11:30 that night, the officers took the informant to the tavern. The informant entered the tavern, returned in a few minutes, and related to the officers that the suspect was playing pool and that he presently had a small quantity of cocaine upon his person.

At approximately 2 a.m. on the next morning, the officers staked out the suspect's room at the Westgage Motel, and checked with the desk clerk to determine the suspect's name. This was in the early morning hours of a weekend. Although they had advised the prosecuting attorney, the officers were reluctant to disturb the district judge to obtain a warrant.

After a period of time the suspect arrived accompanied by a female. He matched the physical description given the officers by the informant. The informant had described him as approximately 6 feet tall, medium build, with his hair tied in a ponytail on top. He entered the room where the

informant said he would, and arrived in the vehicle pointed out by the informant.

Shortly thereafter, the officers approached the door and knocked on it. Officer Stonehouse stated, "Smiley open the door," or words to that effect. As the door was opened a small way, the odor of marijuana reached the nostrils of the officers. Officer Stonehouse identified himself as a police officer from Bremerton. The suspect attempted to slam the door, which was prevented by Officer Stonehouse. In attempting to keep the door open the officers broke down the door.

When the officers arrived inside the apartment, the defendant was informed that he was under arrest and was advised of his *Miranda* rights. When they advised him they could get a search warrant, he consented to a search and was cooperative. The officers found cocaine and a quantity of marijuana.

█ In analyzing the evidence we find that the officers were acting upon a tip from a known informer who had given information to the police in the past which had proved to be reliable because it had resulted in the arrests of defendants convicted of possession of controlled substances. The informant had described the suspect with great specificity and had advised the police officers of the informant's personal knowledge of the possession of controlled substances by the suspect. This was no mere conclusion or suspicion on the part of the informant. The information conveyed to the police complied in every respect with the *Aguilar-Spinelli* test this court explained most recently in *State v. White,* 10 Wn. App. 273, 277, 518 P.2d 245 (1973):

> To constitute probable cause for a search or arrest, information conveyed to the police, even by a *reliable* informant, must be tested to determine that the *tip* is reliable. The reliability of the information may be established by a showing that the informant based his assertions on direct personal observations, or upon the reasonableness of the underlying circumstances, sources, or facts upon which the informant reached his conclusion.

In every case, the informant's information must go beyond a mere unsupported conclusion, belief, or suspicion that the illegal activities are occurring or will occur.

*See Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964); *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969); *State v. Chatmon,* 9 Wn. App. 741, 515 P.2d 530 (1973).

██ The trial court was obviously bothered because the door was broken down. When we consider that the police had probable cause to arrest the defendant, had knocked on the door and established their identity, had smelled the marijuana, and had the door attempted to be slammed in their faces, it becomes obvious that the officers were acting most reasonably when they attempted to secure the defendant and preclude his access to weapons or evidentiary items. Pushing in the door immediately was the only method they had available to secure the defendant. Considering all the circumstances, the actions of the officers were clearly reasonable and constitutionally permissible. *See Ker v. California,* 374 U.S. 23, 37-41, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963); *Miller v. United States,* 357 U.S. 301, 2 L. Ed. 2d 1332, 78 S. Ct. 1190 (1958); *People v. Maddox,* 46 Cal. 2d 301, 294 P.2d 6 (1956), *cert. denied,* 352 U.S. 858, 1 L. Ed. 2d 65, 77 S. Ct. 81 (1956); *People v. Gauthier,* 205 Cal. App. 2d 419, 22 Cal. Rptr. 888 (1962); *Henson v. State,* 236 Md. 518, 204 A.2d 516 (1964).

Although the issue was not raised by the defendant in this appeal, we note that the officers, when they made the arrest, were acting in substantial compliance with RCW 10.31.040, which provides:

> To make an arrest in criminal actions, the officer may break open any outer or inner door, or windows of a dwelling house or other building, or any other inclosure, if, after notice of his office and purpose, he be refused admittance.

The "knock and wait" rule has been construed by the Washington Supreme Court as allowing a forcible entry without announcement of identity and purpose and a de-

mand for admittance "when exigent and necessitous circumstances exist." *State v. Young,* 76 Wn.2d 212, 217, 455 P.2d 595 (1969). The same rule has frequently been reiterated and applied by the Court of Appeals of this state. *State v. Singleton,* 9 Wn. App. 399, 512 P.2d 1119 (1973); *Coleman v. Reilly,* 8 Wn. App. 684, 508 P.2d 1035 (1973); *State v. Miller,* 7 Wn. App. 414, 499 P.2d 241 (1972); *State v. Hatcher,* 3 Wn. App. 441, 475 P.2d 802 (1970). We are of the opinion that after the officers had knocked, the door had been opened, and the officer's office or identity had been established, the detection of the odor of marijuana and the attempt of the defendant to slam the door constituted sufficient "exigent and necessitous" circumstances such that the entry into the room without a formal announcement of purpose was constitutionally reasonable and in substantial compliance with the "knock and wait" rule expressed in RCW 10.31.040. Since the entry into the room to effect the arrest was lawful, the evidence found on the person of the arrestee was lawfully obtained. Similarly, the officers lawfully obtained the evidence found as a result of a search of the room pursuant to a written consent to search knowingly and voluntarily given by the defendant.

The trial court's order suppressing the evidence is therefore reversed and the cause is remanded for trial.

PEARSON, C.J., and PETRIE, J., concur.