[No. 2326-1.    Division One.    May 20, 1974.]

THE STATE OF WASHINGTON, *Respondent,* v. MICHAEL EUGENE
JOHNSON, *Appellant.*

*Thomas Gayton,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Jonathan B. Noll, Deputy,* for respondent.

SWANSON, C.J.—Michael Eugene Johnson appeals from his conviction of grand larceny by possession. The decisive issue presented by this appeal is the legality of the entry and search of Johnson's apartment by police.

Trial was to the court sitting without a jury, and its findings, some of which are disputed by appellant, reveal the following facts pertinent to our review: Seattle Police Officer Greg Hull learned from a reliable informant that

Frank Mooney, an escapee from juvenile detention who was believed to be armed and dangerous, was living with appellant Johnson in an apartment at 3608 Phinney Avenue North in Seattle, Washington. Hull also was informed that the residence contained firearms and stereo equipment stolen in recent burglaries. Further, Hull knew that Johnson and Mooney were frequent companions and that Mooney had advised another police officer several days prior to December 10, 1972, that he was armed and would kill any police officer who attempted to arrest him.

On December 10, 1972, Officers Hull and Robert Elmore proceeded to stake out the Phinney Avenue North residence, and at approximately 5:15 p.m., they saw Mooney arrive in a red sports car, enter the residence, and then leave in the same vehicle with an unknown person. As he was leaving, Mooney recognized Hull and accelerated his vehicle. A high-speed circular chase resulted which ended when Mooney drove his car back to the driveway at 3608 Phinney Avenue North where it crashed and stopped against a wall.

While placing Mooney and the other occupant of the vehicle under arrest, Hull saw appellant Johnson standing near the entrance to his apartment watching the arrest. Johnson then moved quickly back into his residence which caused Hull to believe that Johnson was securing weapons to assault the officers and to interfere with the arrest of Mooney. Accordingly, Hull directed two other officers to assist him in entering the residence. Officer Hull went up the stairs to a landing leading to Johnson's residence, saw Johnson through the partially open front door, knocked open the front door and entered. Two other officers entered through the rear door and appellant Johnson and a companion were taken into custody. At the same time, the police officers observed silverware and other kitchenwares on the drainboard and in open drawers in the kitchen which they recognized as stolen property. At trial, John-

son's motion to suppress the admission of this evidence was denied, and it is that denial which forms the basis for appellant's primary assignment of error.[1]

Appellant's basic contention is that the state failed to sustain its burden of showing a legal justification for the unannounced forceable no-knock entry and subsequent search of his apartment and therefore the evidence so obtained is inadmissible and the motion to suppress should have been granted. The state asserts that the entry of appellant's apartment by police was proper as a cautionary search to insure the safety of the officers who were effecting the arrest of Mooney. Both parties direct our attention to *State v. Toliver*, 5 Wn. App. 321, 487 P.2d 264 (1971), in which this court approved basic principles applicable to the cautionary search of a private residence. Although we do not retreat from the rule announced in *Toliver*, we are of the opinion that the state's apparent reliance upon the result reached in that case to support what happened here is misplaced.

In *Toliver*, police sought to arrest one Gerald Speaks who was wanted on a federal warrant for the unlawful sale of a machine gun. The officers were told by a reliable informant that persons in the house where Speaks was living were armed and would resist any effort by police to make the arrest. Speaks was arrested in his car which was located directly off the porch of the house in question. The *Toliver* opinion contains this graphic description of the arrest scene at page 323:

> At this time, one Stephanie Vasiliou, who was standing outside the car with Speaks, began screaming. The open front door of the house was slammed shut and sounds of running could be heard from inside the house. Officer Pellegrini yelled that they were police officers and to come out. About that time the defendant Toliver jumped

---

[1]Appellant also raises assignments of error relating to the admissibility of certain statements to police allegedly made by appellant. In view of our disposition of appellant's assignment of error relating to the suppression of physical evidence, we need not discuss the other claimed errors.

out of an upstairs window and began running around the roof of the house. He was told to come down off the roof, which he did. The officers were informed there was one more man in the house. They believed it was necessary for their safety and protection that the house be cleared of people who were in a position to fire at them as they left with their prisoner. At this time Detective Pellegrini again yelled for the person in the house to come out, and obtaining no response, entered the house through the front door in order to secure the downstairs.

Upon entering the house, the officers in *Toliver* noticed certain articles which appeared to resemble property taken in a recent burglary. They also discovered a man lying under a bed and placed him in custody, but no further search of the house was made until after a warrant was obtained. The *Toliver* court concluded that the police officers had reasonable cause to believe their safety was endangered and therefore upheld the limited self-protective search.

■ It is not to be doubted that police officers must be permitted to take all reasonable and necessary steps to assure their safety when performing their official duties. At the same time, as stated in *Toliver* at page 326:

The principle that officers are entitled to take action to protect themselves must necessarily be tempered, however, by a respect for the personal security and privacy of individuals which is secured by the Fourth and Fourteenth Amendments. If a confederate or friend of an arrestee is to be detained, or a search made of his house to effect his detention, the Fourth Amendment, at the minimum, requires that the officers have reasonable cause to believe that, in carrying out their duty to arrest, their safety would be endangered, *i.e.*, the question is "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."

■ Appellant argues that the scope of protective search incident to an arrest must be defined in terms of exigent circumstances and asserts that no exigency was occasioned by the arrest of Mooney and appellant's disappearance into

his apartment which was less than 100 feet from the point where Mooney was arrested. As the state points out, however, the trial court entered specific findings of fact as to the reasonableness of the officers' belief that Johnson's return to his apartment posed a threat to their safety. The court made these crucial findings of fact:

> [T]hat Officer Hull entered the defendant's residence and directed Officers Ferris and Collins to enter the defendant's residence for the reason that he feared the defendant was securing weapons to assault the officers and interfere with the arrest of Mooney.

Disputed finding of fact No. 1, in part.

> That Officer Hull was familiar with the arrest record of the defendant Michael Eugene Johnson and had reasonable cause to fear for the safety of himself and the other officers.

Disputed finding of fact No. 2. Substantial evidence supports these findings which are therefore determinative of any question as to the right of the officers to take self-protective action. Therefore, our review must be limited to an examination of the self-protective action taken by police to determine whether such action, under the circumstances, was reasonable.

At the outset, it must be noted that any finding of "reasonableness" in circumstances such as those presented in the case at bar can only be respected insofar as it is consistent with Fourth Amendment guarantees. *Ker v. California*, 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963). In this context, the question of whether self-protective actions of police are reasonable or necessary can be determined only on a case-by-case basis. It is settled, however, that in the absence of exigent and necessitous circumstances such as those described in *State v. Young*, 76 Wn.2d 212, 455 P.2d 595 (1969), entry by police into a private residence as a part of necessary and justified self-protective action must be preceded by an announcement of identity, purpose, and demand for admittance such as is required to execute a search warrant or to make an arrest within a

private dwelling. *See* RCW 10.31.040.[2] This requirement was clearly articulated in *Toliver* at page 327:

> However, such self-protective action requiring the warrantless entry into a dwelling, absent exigent circumstances excusing compliance with the requirement, can be undertaken only after the person or persons within fail to comply with the demand, by an officer who identifies himself as such, that such persons come out. Moreover, both the intrusion made by the officers and the subsequent detention of the person thought to be dangerous must be no greater than that which is required to secure the officers' safety.

Significantly, in *Toliver,* despite the apparent necessity for immediate and decisive self-protective action, the police identified themselves and called for the person in the house to come out, and it was only after obtaining no response to these actions that they proceeded to enter the private dwelling. In contrast, in the case at bar, the police officers neither knocked on the door, announced their presence, stated their purpose, nor demanded that appellant Johnson come out before they entered his apartment. Although Johnson was plainly visible to Officer Hull through the partially open door, Hull kicked open the door and took Johnson into custody.[3]

---

[2] RCW 10.31.040 provides as follows:

To make an arrest in criminal actions, the officer may break open any outer or inner door, or windows of a dwelling house or other building, or any other inclosure, if, after notice of his office and purpose, he be refused admittance.

The rule taken from this statute is generally referred to as the "knock and wait" or "knock and announce" rule. Recent cases involving the applicability of this rule include *State v. Neff,* 10 Wn. App. 713, 519 P.2d 1328 (1974); *State v. Peele,* 10 Wn. App. 58, 516 P.2d 788 (1973); *State v. Singleton,* 9 Wn. App. 399, 512 P.2d 1119 (1973); *State v. Miller,* 7 Wn. App. 414, 499 P.2d 241 (1972).

[3] Officer Hull described his entrance into the apartment as follows: "Q Did you go up the landing? A Yes, I did. Q And what happened when you reached the top? A When I reached the top the door was open partially. Mr. Johnson had his back to me. I kicked the door open, physically kicked it open, had my gun drawn, told him to put his hands above his head against the wall." On cross-examination, Officer Hull stated: "I kicked this door open. It was partially opened and I kicked it

The state contends that an entry in the circumstances that existed here could not be conditioned upon strict compliance with the "knock and wait" rule because of the threat to the safety of the officers. In support of this position, the state directs us to *State v. Wilson,* 9 Wn. App. 909, 515 P.2d 832 (1973), where strict compliance with the rule was excused in part because of potential danger to police. In *Wilson,* the officers seeking to serve a search warrant testified that they knocked loudly on the front door, announced that they were present with a warrant and waited approximately 10 seconds before forceably entering. The defendant, known to narcotics agents as "Gangster Mack," was believed to be armed and, in fact, was armed with a loaded .38 caliber pistol when the officers entered. The trial court concluded that the officers' actions were "reasonable under the circumstances" as a matter of self-protection and therefore strict compliance with the knock and announce rule could be excused. On appeal, this court agreed with the implied finding of the trial court that exigent and necessitous circumstances justified a forceable entry. In the instant case, however, although the trial court found that police had reasonable cause to fear for their safety, there is no finding that the actions taken by police in response to that fear were, in fact, reasonable under the circumstances. In short, the trial court's findings, although supported by substantial evidence, do not amount to a finding of exigent and necessitous circumstances sufficient to excuse compliance with the knock and wait rule. *See State v. Wilson, supra; State v. Young, supra.*

---

with my foot the rest of the way, yes sir. Q Did you identify yourself as a police officer before doing that? A As I was doing it. Q Before you did it, did you identify yourself as a police officer? A No, I didn't. Q Did you ask for Michael Johnson to come out before entering his residence? A No. I did not. Q Did you knock on the door? A No, I did not."

The trial court entered a specific finding of fact as follows: "[T]hat Officer Hull saw the defendant in the residence through the partially open front door; that Officer Hull knocked open the front door and entered; that Officers Ferris and Collins entered through the rear door a few seconds later." Finding of fact No. 8, in part.

To recapitulate the arrest scene here in question, it is apparent from the trial court's findings that the officers' self-protective actions were commenced in an atmosphere of reasonable concern for the officers' safety. The police had reasonable cause to believe that appellant Johnson might obtain a weapon and assault them and, on the basis of such information, Officer Hull proceeded to the top of the landing and prepared to enter the apartment. At this point the scene changed. The door to Johnson's apartment was partially open and Johnson, the person who posed the threat to the safety of the officers and justified the self-protective action, could be seen with his back to the door. Thus, it is apparent that the threat of harm had at least diminished substantially, if it had not terminated. What were the exigent and necessitous circumstances existing at that point which excused compliance with the knock and wait rule? The trial court's findings and conclusions are silent on this point and our search of the record reveals no evidence of any unambiguous sound or activity which might have required the officers to act quickly. *See State v. Singleton,* 9 Wn. App. 399, 512 P.2d 1119 (1973).

The state seeks to justify the forceable no-knock entry only on the basis of danger to the safety of the officers; however, a fear of danger once reasonably and justifiably held does not continue indefinitely regardless of what is later revealed. Here, the legitimate fears which justified commencement of self-protective action were dispelled when the officer in charge was able to observe appellant Johnson through the partially open door and was in a peculiarly advantageous position to observe appellant's reaction to any compliance with the knock and announce rule. In *State v. Hatcher,* 3 Wn. App. 441, 475 P.2d 802 (1970), the police officers broke in the front door of an apartment without a knock or other warning even though they were able to observe through a window that none of the occupants was doing anything suspicious. Exigent and necessi-

tous circumstances were not present in that situation because, as we stated at page 448:

> Had the police officers knocked and announced the purpose of their visit, they could have seen immediately the reactions of the persons present in the apartment. If their reactions suggested that they intended to dispose of evidence, the officers could have forced their way into the apartment without any further compliance with the knock and announce rule. Since the officers were able to see into the apartment, they had an unusual opportunity to discover immediately and unambiguously the manner in which those present in the apartment chose to react to the announced presence of the law.

Similarly, in the instant case, the police officers had a clear opportunity to determine whether their fears were justified by observing Johnson's reaction to their knock and announcement of purpose, or demand that he come out. This they failed to do. We therefore hold there is insufficient evidence of exigent and necessitous circumstances excusing compliance with the knock and wait rule. The entry and search was illegal at its inception, and nothing intervening occurred to validate it under the facts as found by the trial court and appearing in the record. The motion to suppress the evidence obtained in Johnson's apartment should have been granted. *Mapp v. Ohio,* 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, 84 A.L.R.2d 933 (1961).

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

HOROWITZ and FARRIS, JJ., concur.