[No. 2241-1. Division One. November 18, 1974.]

THE STATE OF WASHINGTON, *Respondent,* v. FLOYD CASPER DUGGER, *Appellant.*

*Edward E. Gibson*, for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney*, and *Gerald M. Lorentson, Deputy*, for respondent.

JAMES, J.—Floyd Dugger appeals from convictions for two counts of professional gambling in violation of RCW 9.47.320.

A Seattle police officer, acting "undercover," entered a house rented to Dugger on August 14, 1971, and on August 28, 1971, and observed gambling in the form of a game of "craps." A "raid" of the premises was planned. The undercover officer was to enter the premises at 2:15 a.m. of September 11, 1971, and stay until 2:40 a.m. if gambling was being conducted. When the undercover officer did not return by the appointed time, four uniformed officers and nine or ten plainclothes officers forced the front and rear doors of the house without knocking or announcing their

identity or purpose. They arrested Dugger and several others who were present and seized dice, a partial deck of cards, and a cigar box containing $27.15. The undercover officer did not announce his identity or attempt to arrest anyone or seize any evidence prior to the entry of the other officers. The officers had not obtained either a search warrant or an arrest warrant. The seized items were the subject of a suppression motion which the trial court denied.

Dugger was charged with separate counts of professional gambling for each of the 3 days on which the undercover officer observed gambling, but was convicted at jury trial of only count 1 relating to August 14 and count 3 relating to September 11.

Dugger's principal arguments on appeal concern only the denial of his motion to suppress with reference to count 3. He contends that his motion should have been granted because the evidence was seized in violation of the "knock and announce" rule of RCW 10.31.040, the fourth amendment of the United States Constitution and article 1, section 7 of our constitution. He also contends that the motion should have been granted because the evidence was seized without a search warrant. His third argument challenges the sufficiency of the evidence to support his conviction on either count 1 or count 3.

Dugger's "knock and announce" claim is based upon the admitted failure of the officers to comply with the statutory commands of RCW 10.31.040. The trial court held, however, that the evidence need not be suppressed because compliance with the statute was excused under the "exigent and necessitous circumstances" exception announced in *State v. Young,* 76 Wn.2d 212, 217, 455 P.2d 595 (1969). Before we consider whether the exigent circumstances exception excused compliance in this case, we must first consider whether the presence of the undercover officer inside the premises at the time of the raid provides a ground for admission of the evidence untainted by the failure of the other officers to comply with the statute.

██ RCW 10.31.040 provides:

> To make an arrest in criminal actions, the officer may break open any outer or inner door, or windows of a dwelling house or other building, or any other inclosure, if, after notice of his office and purpose, he be refused admittance.

The rule of the statute was known at common law and received the protection of the Fourth Amendment in *Ker v. California*, 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963). *See State v. Miller*, 7 Wn. App. 414, 499 P.2d 241 (1972). In Washington, a violation of the rule, unless excused by exigent circumstances (*see State v. Young, supra*), requires that any evidence thereby obtained be suppressed. *State v. Hatcher*, 3 Wn. App. 441, 475 P.2d 802 (1970); *State v. Miller, supra*; *Coleman v. Reilly*, 8 Wn. App. 684, 508 P.2d 1035 (1973); *State v. Johnson*, 11 Wn. App. 311, 522 P.2d 1179 (1974).

The State asserts, however, that the presence of the undercover officer inside the premises prior to the entry of the other officers distinguishes this case from prior cases. Their argument relies upon the undercover officer's authority to arrest those committing crimes in his presence and seize evidence of those crimes incident to the arrest or in his plain view. The thrust of the State's argument is that since the undercover officer *could* have legally seized the evidence in question, the legality of the other officers' entry should not be relevant to the admission of the evidence.

We disagree. While *Hatcher, Miller* and *Johnson* did not involve a similar factual situation, the case of *Coleman v. Reilly, supra*, is very relevant. In *Reilly*, undercover officers had been attending a gambling party when a guest arrived who they feared might recognize them. They left, organized a "raiding party" and returned. Without complying with the statute, the undercover officers opened the door and entered the premises. They were followed by the officers of the "raiding party." They observed gambling, arrested the participants and seized evidence. The court held that the

failure to "knock and announce" required that the evidence be suppressed.

While the principal discussion in the opinion dealt with whether exigent circumstances existed to excuse compliance, the court concluded its opinion with a discussion of *State v. Darroch,* 8 Ore. App. 32, 492 P.2d 308 (1971), a decision of Department One of the Court of Appeals of Oregon which was factually very similar. In *Darroch,* after an undercover officer had left a house to get money to purchase hashish from the occupants, other officers entered and arrested the occupants. The Oregon court held that the occupants had extended an implied invitation to the undercover officer to return and that since he had legal authority to arrest the occupants, the other officers were extended the same rights. The *Reilly* court refused to follow the reasoning of the *Darroch* majority, choosing instead to agree with the dissent. *Reilly* then is a rejection of the proposition that if undercover officers could have effected the search, then noncompliance by other officers will be excused.

█ Reason compels a rejection of the same contention in this case. The Ninth Circuit Court of Appeals recently stated the purposes of the knock and announce rule:

> (1) it reduces the potential for violence to both the police officers and the occupants of the house into which entry is sought; (2) it guards against the needless destruction of private property; and (3) it symbolizes the respect for individual privacy summarized in the adage that "a man's house is his castle." *See* Miller v. United States, 1958, 357 U.S. 301, 307, 313 n. 12, 78 S.Ct. 1190, 1194, 2 L.Ed.2d 1332; Note, Announcement in Police Entries, 80 Yale L.J. 139, 140-41 (1970).

*United States v. Bustamante-Gamez,* 488 F.2d 4, 9 (9th Cir. 1973). *See also People v. Peterson,* 9 Cal. 3d 717, 511 P.2d 1187, 108 Cal. Rptr. 835 (1973).

█ None of these purposes is likely to be obviated by the mere presence of an undercover officer whose authority to arrest is unknown to a lawful occupier of premises.

Without the prior warning of a knock and announcement, an officer's presence in no way minimizes the shock of the sudden intrusion with its reflexive tendency to trigger violence. Nor will the needless destruction of private property be avoided unless an opportunity is presented to permit peaceful entry. Even assuming that an occupant's expectations of privacy could be unknowingly waived by the presence of an undercover officer, this cannot realistically be construed as a waiver of expectations of privacy as to "a class of persons whose very existence is unknown" to the occupant. *State v. Darroch, supra* (dissenting opinion), as quoted in *Coleman v. Reilly, supra* at 688. *Accord, State v. Wetteland,* 9 Ore. App. 87, 496 P.2d 27 (1972) in which Department Two of the Court of Appeals of Oregon distinguishes its *Darroch* decision. *See also State v. Yenke,* 288 So. 2d 531 (Fla. Dist. Ct. App. 1974) (dissenting opinion). Of course, if the undercover officer had announced his identity and attempted to effect an arrest or seize evidence before his fellow officers entered, the issues in this case would be significantly different.

We are aware that other cases have reached a contrary result. In *United States v. Glassel,* 488 F.2d 143 (9th Cir. 1973), the court, citing no authority, held that since the undercover officer had the contraband in his "constructive possession" at the time of the illegal entry by other agents, there was no causal connection between the illegal conduct and the obtaining of the evidence. We find such reasoning unpersuasive and inappropriate to the facts of this case.

In *United States v. Bradley,* 455 F.2d 1181, 1186 (1st Cir. 1972), *aff'd on other grounds,* 410 U.S. 605, 35 L. Ed. 2d 528, 93 S. Ct. 1151 (1973), the court reasoned that the lawful presence of the undercover officer

> precludes any argument that later entries violate the privacy of occupants. Since privacy is what [the federal knock and announce statute] seeks to protect, the prior lawful entry and continued presence of [a federal narcotics agent] vitiates any impropriety of subsequent entries.

We find *Reilly's* rejection of such a "waiver of privacy"

theory to be more persuasive. And, as pointed out in *Busta-mante-Gamez,* preservation of the right of privacy is not the only concern of the knock and announce rule. The cases which *Bradley* cites in support of its reasoning[1] all involve instances where, after a *proper* knock and announcement by some officers, there was a later improper entry by others. Where there has been a proper warning, the policies behind the statute are served and it would be meaningless to apply the exclusionary rule and thereby punish officers who entered legally merely because other officers failed to observe the law. But the mere presence of an undercover officer *unknown* to the occupants does not serve the purposes of the statute and we therefore find *Bradley* unpersuasive.

We next consider whether compliance with the knock and announce rule in this case was excused because of "exigent and necessitous circumstances," *State v. Young,* 76 Wn.2d 212, 217, 455 P.2d 595 (1969). The trial judge, in her oral opinion denying the motion to suppress, found that exigent circumstances existed on two grounds: (1) the easy and quick disposability of gambling paraphernalia, and (2) the potential danger to the undercover officer.

■ *Ker v. California, supra* at 33, discussed the applicable scope of our review in cases such as this:

> We reiterate that the reasonableness of a search is in the first instance a substantive determination to be made by the trial court from the facts and circumstances of the case and in the light of the "fundamental criteria" laid down by the Fourth Amendment and in opinions of this Court applying that Amendment. *Findings of reasonableness, of course, are respected only insofar as consistent with federal constitutional guarantees.*

(Italics ours.) When the evidence in support of a finding of exigent circumstances is in the form of oral testimony, as is

---

[1]*United States v. Marson,* 408 F.2d 644 (4th Cir. 1968), *cert. denied,* 393 U.S. 1056, 21 L. Ed. 2d 698, 89 S. Ct. 695 (1969); *Cognetta v. United States,* 313 F.2d 870 (9th Cir. 1963); *United States v. Viale,* 312 F.2d 595 (2d Cir.), *cert. denied,* 373 U.S. 903, 10 L. Ed. 2d 199, 83 S. Ct. 1291 (1963).

often the case, we will defer to the trial judge's assessment of credibility, *State v. Wilson*, 9 Wn. App. 909, 515 P.2d 832 (1973). But a finding of exigent circumstances may not be sustained unless the evidence which the judge finds credible is constitutionally sufficient.

At the suppression hearing, the evidence in support of a finding of exigent circumstances consisted of a diagram of the premises and the testimony of one of the officers who participated in the raid. The diagram indicated that the premises consisted of an entry hall, a living room opening off the entry hall where a bar was located, and another room opening off the living room where the dice table was located. The rear entrance led to the kitchen which opened onto the living room. The officer's testimony in support of the "disposability" ground, was that in his experience, gambling paraphernalia could be disposed of in a matter of seconds. He testified, however, that he heard no noises indicating that evidence was being destroyed prior to his forceful entry. His only testimony in support of the fear for the safety of the undercover officer was his statement that the safety of an undercover officer was a paramount consideration in executing searches.

We find that these facts do not constitute substantial evidence which is constitutionally sufficient to support the trial judge's conclusion that exigent circumstances existed.

In those Washington cases which have upheld a finding of exigent circumstances, the entering officers had significantly greater knowledge to support their conclusion that an immediate entry was necessary. For example, in *Young*, where the police were executing a search warrant for narcotics, after they knocked and announced their identity, they heard "screaming, yelling, and the sound of the occupants scurrying and running throughout the house" indicating that the occupants were attempting to destroy balloons of heroin. *State v. Young, supra* at 213. In *State v. Singleton*, 9 Wn. App. 399, 512 P.2d 1119 (1973), the police were also executing a search warrant for narcotics and made

several knocks, announced their identity, and demanded admittance. They then observed someone looking out a window at them and heard sounds of movement indicating that someone was trying to dispose of evidence. Similarly, in *State v. Neff*, 10 Wn. App. 713, 519 P.2d 1328 (1974), the officers knocked, the door was opened and the officer identified himself. Before he could identify his purpose of serving a search warrant, the occupant attempted to slam the door. To prevent destruction of evidence, the officers broke down the door.

In *State v. Wilson, supra,* the police were again executing a search warrant for narcotics and had knocked, announced their identity and purpose and waited 10 seconds before breaking in. In holding that they were excused from waiting any longer, we noted that the potential destructibility of the evidence combined with their concern for their own safety made their entry reasonable. The officers' concern for their own safety was based upon their knowledge that the occupant was known to be armed with a pistol, had other firearms and had served time in federal penitentiaries.

In each of these cases, the officers either heard unambiguous sounds indicating that evidence was going to be destroyed, or based upon substantial knowledge, reasonably feared for their own safety. By comparison, the entering officers in this case had no such knowledge. Permitting a finding of exigent circumstances based on the general propensity to destroy evidence would, in effect, sanction a "blanket no-knock search policy." We declined a similar invitation in the more tempting case of narcotics searches, *State v. Hatcher*, 3 Wn. App. 441, 446, 475 P.2d 802 (1970), and such policy as to gambling searches was expressly rejected in *Coleman v. Reilly*, 8 Wn. App. 684, 687, 508 P.2d 1035 (1973).

Additionally, the officers knew the layout of the premises and therefore knew that some small interval of time would elapse between their announcement and the presence of an

officer at the dice table to prevent destruction of evidence. However, this knowledge is not sufficient to distinguish this case from *Reilly* because in this case the undercover officer was already inside the premises stationed at the dice table at the time of the entry. Had there been any effort to destroy the evidence, he could have observed it and, if he chose, tried to prevent it. In *State v. Hatcher, supra,* the police chose to enter without knock and announcement though they could observe the occupants of the apartment through the windows. We there held that the evidence should be suppressed because as in this case, the officers

> had an unusual opportunity to discover immediately and unambiguously the manner in which those present in the apartment chose to react to the announced presence of the law.

*State v. Hatcher, supra* at 448. *See also State v. Johnson,* 11 Wn. App. 311, 522 P.2d 1179 (1974). In view of such opportunity, the "disposability" of the evidence does not constitute a ground for a finding of exigent circumstances.

The other ground relied upon to justify the failure to knock and announce is the potential danger to the undercover officer. Concern for the safety of officers and others is a significant ground which we approved in *State v. Wilson, supra.* The trial court's opportunity to observe the witness requires us to conclude that the concern was in good faith. But a good faith concern for the safety of the undercover officer is not sufficient to justify ignoring the statute without some showing of reasonable grounds to support the concern. Some credible evidence, such as knowledge that the occupants might possess weapons and be predisposed to respond violently, is required to support a good faith claim of concern for safety. *Compare State v. Wilson, supra; Alonzo v. United States,* 439 F.2d 991 (9th Cir. 1971).

Since there is no evidence to support the trial court's finding that exigent and necessitous circumstances existed, the court's denial of Dugger's motion to suppress was error. We, therefore, need not consider Dugger's second contention

concerning the failure to suppress the same evidence because it was seized without a search warrant. Admission of the seized evidence in this case was prejudicial. Therefore, the conviction and sentence on count 3 relating to professional gambling on September 11, 1971, the day of the search, is reversed.

■ Dugger's motion challenging the sufficiency of the evidence as to all three counts was waived when he proceeded to present his case in chief, *State v. Wilson*, 74 Wn.2d 243, 444 P.2d 141 (1968); *State v. Thach*, 5 Wn. App. 194, 486 P.2d 1146 (1971). Therefore, we need not consider the issue further.

Affirmed as to count 1 and reversed and remanded for new trial as to count 3.

FARRIS and HOROWITZ, JJ., concur.

Petition for rehearing denied December 31, 1974.

Review denied by Supreme Court February 25, 1975.