[No. 2753-1. Division One. April 14, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. LILLIAN C. BEASON, *Appellant*.

184

*Demco & Erickson* and *John W. Demco*, for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Corydon J. Nelson, Deputy,* for respondent.

JAMES, J.—Defendant Lillian Beason was convicted of possessing heroin in violation of the Uniform Controlled Substances Act. Her appeal challenges the trial judge's denial of her motion to suppress the evidence obtained in a search of her home. Beason asserts that the police forcibly entered her home in violation of the "knock and announce" requirement which the appellate courts of this state have consistently imposed upon law enforcement officers. *State v. Young,* 76 Wn.2d 212, 455 P.2d 595 (1969); *State v. Harris,* 12 Wn. App. 481, 530 P.2d 646 (1975); *State v. Hatcher,* 3 Wn. App. 441, 475 P.2d 802 (1970).

The relevant facts are fairly summarized in the formal findings of fact entered after the hearing of Beason's motion to suppress.

> During the evening of May 30, 1973, Detective Victor Heins of the Narcotics Unit of the Seattle Police Department, obtained a search warrant for the residence located at 1733-24th Avenue, Seattle, and for the person of Lillian C. Beason. The warrant was based on information given to Detective Heins by a confidential informant which was that the informant had observed the occupant of the residence, Lillian C. Beason, make a sale of heroin earlier that evening;

Finding of fact No. 1.

> The informant further informed Detective Heins that the heroin was packaged in a small balloon and this balloon was taken from a compartment in the bra Lillian Beason was wearing which contained a large supply of such balloons;

Finding of fact No. 2.

> Detectives Heins and Ingertilla each had more than five years' experience in the narcotics unit and knew that dealers in heroin package the narcotic in a method which allows quick disposal by swallowing or flushing down the

toilet. They also knew that the objects of narcotics search warrants are frequently destroyed if quick entry into the premises is not accomplished;

Finding of fact No. 3.

After Detective Heins obtained the search warrant, he, Detective Ingertilla, Detective Hart, Detective Grout, and policewoman McGloughin drove to the vicinity of 1733-24th Avenue, arriving between 8:30 and 9 p.m.;

Finding of fact No. 4.

Detective Ingertilla knocked on the front door loud enough to be heard inside the house and yelled "police." He heard nothing from inside the house and there was no response to the knock or announcement;

Finding of fact No. 5.

After several seconds had elapsed, Detective Ingertilla forced open the door and entered the residence. Detective Heins had been stationed at the back door with one of the other detectives and when he heard Detective Ingertilla forcing the front door, he, Detective Heins, forced open the back door leading to the kitchen;

Finding of fact No. 6.

The trial judge entered the following conclusions of law:

The manner of execution of the search warrant obtained by Detective Heins on May 30, 1973, for the residence of 1733-24th Avenue, Seattle, was *insufficient* to meet the requirements of RCW 10.31.040;

(Italics ours.) Conclusion of law No. 2.

The manner of execution of the search warrant was reasonable and legal under the circumstances because the detectives had reason to believe that further announcement and delay in entering the residence would allow an attempt to destroy evidence;

Conclusion of law No. 3.

In his oral ruling following the hearing of the motion to suppress, the trial judge said:

I am going to deny the motion to suppress the evidence. *Specifically I find that the officers did not properly announce the purpose of their visit.* In other words, they did not properly announce that they were there to exe-

cute a search warrant plus giving any inhabitants knowledge of who was there and why they were there, as required. But it seems to me that it wasn't required that they make that announcement under the circumstances of this case. That is the police did have reason to believe that any announcement of their presence and purpose followed by any substantial period of delay would lead to the destruction of the evidence in the case. *I specifically find that there was nothing here that specifically indicated that there was an attempt being made to destroy evidence in the case such as in the Young case.* But my ruling is based on the fact that the police had information that the defendant had engaged in sales or a sale of heroin that day. And had additional heroin on her person. It seems to me entirely reasonable to conclude that if under those circumstances there was a knocking, a delay that it would certainly be reasonable to conclude that the evidence would be destroyed. *In fact, I guess I am adopting the so-called blanket rule that would authorize police to enter without announcement of purpose and without substantial delay [in] any situation where they had reason to believe that they were dealing with someone that had engaged in sales of heroin and had additional heroin on them. It seems completely artificial under those circumstances to conclude anything other than a delay would be to the destruction of that evidence.* That will be the Court's ruling.

(Italics ours.)

 Patently, the trial judge's ruling was in direct conflict with our consistent refusal to adopt a blanket "no-knock" rule for searches by police officers in narcotics cases. In *State v. Hatcher, supra* at 446, we said:

> Public concern about the traffic in narcotics makes judicial approval of the blanket no-knock search policy of the Seattle Police Department very tempting. But the protective constitutional moat which surrounds every man's home—his castle—may not be indiscriminately drained either by police policy or judicial fiat.

(Footnote omitted.) In *State v. Harris, supra* at 490, we reaffirmed our rejection of a no-knock policy for narcotics searches:

> We have rejected the "blanket rule" approved in some

other jurisdictions which permits police to make an unannounced entry based upon the general propensity of certain offenders, notably those dealing in narcotics or illegal gambling activities, to destroy evidence when confronted by police.

(Footnote omitted.) Even "known" offenders are afforded the Fourth Amendment's guarantee of security against unreasonable invasion of their homes.

Implicit in the Fourth Amendment's protection from unreasonable searches and seizures is its recognition of individual freedom. That safeguard has been declared to be "as of the very essence of constitutional liberty" the guaranty of which "is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen . . . ." *Gouled* v. *United States*, 255 U. S. 298, 304 (1921); cf. *Powell* v. *Alabama*, 287 U. S. 45, 65-68 (1932). While the language of the Amendment is "general," it "forbids every search that is unreasonable; it protects all, those suspected or known to be offenders as well as the innocent, and unquestionably extends to the premises where the search was made . . . ." *Go-Bart Importing Co.* v. *United States*, 282 U. S. 344, 357 (1931). Mr. Justice Butler there stated for the Court that "[t]he Amendment is to be liberally construed and all owe the duty of vigilance for its effective enforcement lest there shall be impairment of the rights for the protection of which it was adopted." *Ibid.*

*Ker v. California*, 374 U.S. 23, 32, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963).

■ Washington is, however, among those jurisdictions which have recognized that "exigent and necessitous circumstances" may excuse strict compliance with "knock and announce" requirements.

To require strict compliance with a "knock and wait" rule in the execution of search warrants, no matter what the circumstances, would hamper the orderly enforcement of criminal law.

*State v. Young, supra* at 217. The rule in Washington is that "when officers come armed with a valid search warrant, forcible entry without announcement of identity and purpose and a demand for admittance *may* be justified

when exigent and necessitous circumstances exist, . . ."
*State v. Young, supra* at 217.

The State contends that this case is controlled by *State v. Harris, supra.* The search in *Harris* was in violation of RCW 10.31.040. The forcible entry was not preceded by a timely announcement by the police of their "office and purpose." The search was held to be justified, however, because of exigent and necessitous circumstances. Those circumstances were that the officers had *"specific* prior knowledge that the *appellant* would swallow evidence when confronted by police." (Italics ours.) *State v. Harris, supra* at 494. The holding of *Harris* on page 489 reflects "a new application of the 'exigent and necessitous circumstances' rule as it has been interpreted in Washington, . . ." The controlling consideration in *Harris* on page 494 was that:

> The police had *"particular information"* about the behavior of the *appellant* indicating that he kept heroin rolled into condoms and that he previously had disposed of heroin stored in that manner by swallowing it when confronted by police, and therefore the police reasonably could infer that the appellant had *"specifically resolved"* to use that method of disposal in the future and had made *"specific preparations* in that regard."

(Citations omitted. Italics ours.)

The present case is readily distinguishable from *Harris.* In this case, the trial judge made no finding that the police had "particular information" or "specific prior knowledge" that the defendant had "specifically resolved" and had made "specific preparations" to dispose of the suspected heroin.

In extending the "exigent and necessitous circumstances rule," the court in *Harris* expressly adopts the rationale of *People v. De Santiago,* 71 Cal. 2d 18, 28-29, 453 P.2d 353, 76 Cal. Rptr. 809, 815 (1969).

> Moreover, the particular reason for entry must be based upon the specific facts of the case. Thus, *where officers have obtained particular information which leads them to reasonably conclude that the occupants of an apart-*

*ment or residence have specifically resolved to effect disposal in the event of police intrusion or have made specific preparations in that regard . . .* an unannounced entry may be justified. In these cases, however, compliance with the applicable knock-and-notice provision is excused *not because of a blanket rule based on the type of crime involved but because the particular circumstances of the case give rise to a reasonable belief that immediate action is necessary to prevent the destruction of physical evidence.*

(Citations omitted. Italics ours.)

For the reasons stated in *State v. Hatcher, supra,* we have also rejected a blanket "no-knock" policy for narcotics searches. The trial judge's approval of a blanket rule was, therefore, error.

Reversed and remanded for entry of an order granting defendant's motion to suppress.

FARRIS, J., concurs.

ANDERSEN, J. (concurring)—This State does not have a "no knock" statute with respect to search warrants in narcotics cases such as the federal government has. 21 U.S.C. § 879. Our "knock and announce" statute is clear and unambiguous. It authorizes an officer to break and enter only "if, after notice of his office and purpose, he be refused admittance." RCW 10.31.040. That statute was not fully complied with, as the trial court found, so the search and seizure were illegal. If change there should be, then the legislature must do it; this court cannot.