[No. 41221.    En Banc.    April 22, 1971.]

THE STATE OF WASHINGTON, *Respondent,* v. DONALD IVAN JOHNSON, *Appellant.*

*Donald Ivan Johnson,* pro se, and *Richard J. Powers,* for appellant (appointed counsel for appeal).

*Charles O. Carroll, Prosecuting Attorney,* and *Patricia G. Harber, Deputy,* for respondent.

HUNTER, J.—The defendant (appellant), Donald Ivan Johnson, was charged by information with two counts of robbery. Pursuant to the defendant's conviction on both counts in a jury trial, this appeal was taken.

On the morning of January 7, 1967, two armed men who were not wearing disguises robbed the 318 Tavern in Seattle. Mrs. Constance Hagen, co-owner of the tavern, testified that the robbers were in the tavern for one-half an hour. Approximately $500 in cash was taken from the tavern, and $27 in cash was taken from one Lorentz Lorentzen, who came to work at the tavern and arrived at the scene while the robbery was still in progress. Mrs. Hagen described the robbers to the police, and, on January 11, 1967, identified the defendant as one of the robbers from photographs shown to her by Sergeant Stansbury of the Seattle Police Department. The defendant's arrest followed shortly thereafter.

The defendant first contends that the trial court lost all jurisdiction to try the instant case, in view of RCW 9.98.010 and RCW 9.98.020. RCW 9.98.010 provides:

Disposition of untried indictment, information, complaint—Procedure—Escape, effect. (1) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of this state, and whenever during the continuance of the term of imprisonment there is pending in this state any untried indictment,

information or complaint against the prisoner, he shall be brought to trial within one hundred twenty days after he shall have caused to be delivered to the prosecuting attorney and the superior court of the county in which the indictment, information or complaint is pending written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: *Provided,* That for good cause shown in open court, the prisoner or his counsel shall have the right to be present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the superintendent having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the board of prison terms and paroles relating to the prisoner.

(2) The written notice and request for final disposition referred to in subsection (1) hereof shall be given or sent by the prisoner to the superintendent having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting attorney and superior court by registered mail, return receipt requested.

(3) The superintendent having custody of the prisoner shall promptly inform him in writing of the source and contents of any untried indictment, information or complaint against him concerning which the superintendent has knowledge and of his right to make a request for final disposition thereof.

(4) Escape from custody by the prisoner subsequent to his execution of the request for final disposition referred to in subsection (1) hereof shall void the request.

RCW 9.98.020 provides:

Loss of jurisdiction and failure of indictment, information, complaint—Dismissal. *In the event that the action is not brought to trial within the period of time as herein provided, no court of this state shall any longer have jurisdiction thereof,* nor shall the untried indictment, information or complaint be of any further force or effect,

*and the court shall enter an order dismissing the same with prejudice.*

(Italics ours.)

The defendant argues that he comes under the above statutes and that the trial court erred in failing to dismiss the charges against him. After the defendant had entered upon a term of imprisonment for a minimum of 5 years pursuant to a parole board revocation hearing at Shelton involving a matter not material to this appeal, he sent a letter to the presiding judge of the county in which the information in the instant case was pending. This letter, requesting dismissal of the instant cause, was subsequently filed with the clerk of the county. The defendant asserts that this letter substantially complied with RCW 9.98.010, *supra*, and that the 120-day statutory period commenced to run from the filing of this request.

Even if the defendant's letter was, as he contends, in substantial compliance with RCW 9.98.010, *supra*, under the circumstances of this case the prescribed statutory period had not expired prior to the time that the defendant was brought to trial. The record shows that the defendant's letter of October 7, 1968 was filed on October 10, 1968. However, 20 days later, when the case came on for trial on October 30, 1968, the defendant moved for a continuance on the ground that the testimony of his codefendant, Noble Sullivan, who appeared at the time incompetent to stand trial, was necessary for his defense. The state resisted the motion and stated that it was ready to proceed with the trial of the defendant set for October 30th. The case was nevertheless continued until a hearing could be held on Noble Sullivan's competency. Counsel for the defendant later conceded to the foregoing in open court:

> If your honor please, I think it is agreed that the continuance granted the defendant Johnson was because Sullivan wasn't competent to be a witness or a defendant. I think it is conceded that at the time of the continuance, it was until a hearing could be held to decide whether he was competent to stand trial, period.

On November 25, 1968, the superior court appointed a commission composed of Dr. C. Richard Johnson, Dr. S. Harvard Kaufman and Dr. George Paeth to examine Noble Sullivan and to advise the court and counsel of the results of their examination. Since it was also felt necessary to have Noble Sullivan examined by a clinical psychologist, Dr. Irwin S. Dreiblatt was appointed on January 10, 1969, to conduct an examination. A hearing was held on April 23, 1969 to determine the competency of Sullivan, and an order was entered staying the proceedings as to Sullivan and committing him to Western State Hospital. The superior court entered formal findings on May 23, 1969. On June 3, 1969, the defendant's case came on for trial.

The above facts show that slightly over half of the 120-day statutory period had elapsed between the filing of the defendant's letter requesting a dismissal and the commencement of his trial, discounting the period of the continuance. RCW 9.98.010, *supra,* specifically provides an exception to the running of the prescribed 120-day limitation period where a continuance is granted upon a showing of good cause. It reads:

> *Provided,* That for good cause shown in open court, the prisoner or his counsel shall have the right to be present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

The continuance having been granted on the basis of the defendant's own request, he cannot now assert it was not granted for good cause, or that it was not necessary or reasonable. Under these circumstances the 120-day statutory period had not run. The defendant's contention that the trial court lost jurisdiction to hear the case by reason of RCW 9.98.010, *supra,* and RCW 9.98.020, *supra,* is therefore without merit.

The defendant next contends that the trial court erred in refusing to grant his motion to dismiss on the grounds that he was denied the right to a speedy trial. For an understandable consideration of this contention it is necessary to relate the history of this case in detail.

On March 31, 1967, the defendant was charged by information in superior court with two counts of robbery based upon the events that transpired on January 7, 1967. The defendant was arraigned shortly thereafter, bail was set at $5,000, and the case was set for trial on May 22, 1967. On or before that date, the trial was continued upon the state's motion due to the unavailability of one of its key witnesses. On August 30, 1967, after a hearing on a petition for a writ of habeas corpus, the defendant's bail was reduced from $5,000 to $3,000, and he was released from jail on a $3,000 bond.

On August 31, 1967, a stipulation was signed by the defendant's retained attorney of record waiving the 60-day rule under RCW 10.46.010, which affords a defendant the right to be brought to trial within 60 days of the filing of an information.

On September 11, 1967, the defendant failed to appear for trial on an unrelated charge. A bench warrant was issued for his arrest in that case. His whereabouts were unknown, and as a result no trial date could be set for the instant case. The defendant was apprehended in the latter part of October or the first part of November.

On November 30, 1967, an amended information was filed charging the defendant with the same two counts of robbery except that Noble Sullivan was joined as a codefendant. After the defendant was returned to King County in January of 1968 to stand trial, he was arraigned on the amended information and a trial was set for March 28, 1968 for both defendants. On March 28, when the case came on for trial, one Dr. Grinstein stated it was his opinion that Noble Sullivan was not competent to stand trial. The trial judge thereupon stayed the proceedings as to Sullivan.

Thereafter, on the same day, on March 28, 1968, the defendant requested a continuance which was granted upon his motion. The defendant was released from the King County Jail at this time after bail was arranged.

On April 11, 1968, an agreed order was entered setting the case for trial on May 15, 1968. On May 15, 1968, the

case came on for trial, but the defendant failed to appear. A bench warrant was issued for his arrest.

On June 17, 1968, the defendant had still not been apprehended on the bench warrant and his $3,000 bond was forfeited. In the latter part of June, 1968, the defendant was again apprehended and was transferred back to King County. On July 1, 1968, the defendant was taken before the presiding judge and bond was set at $20,000.

The defendant had previously been scheduled to appear at a parole board revocation hearing at Shelton in May or June of 1968, but he had failed to appear. Therefore, on July 1, 1968, the presiding judge directed that the defendant be transferred to Shelton for a parole revocation hearing. His parole was revoked on July 30, 1968, and he thereafter was transferred back to King County to stand trial on the robbery charges.

As heretofore stated, a trial date of October 30, 1968 was then set for both the defendant and Noble Sullivan. On October 30, Dr. Grinstein again testified that Sullivan was incompetent. The case was again stayed as to him, and a continuance was again granted the defendant upon his request, on the same grounds as before; that he believed Noble Sullivan would be a witness in his behalf. The defendant's case was continued over the state's objection until such time as a competency hearing could be held for Noble Sullivan. Further, as previously related, the hearing was held on April 23, 1969, and the order was entered staying the proceedings as to Sullivan and committing him to Western State Hospital. The formal findings were entered May 23, 1969.

On May 12, 1969, prior to the entry of the formal findings, an order of continuance which was orally agreed to by counsel for the defendant was entered continuing the case 1 day to June 3, 1969, so that the deputy prosecutor could argue a matter before this court. The trial commenced on June 3, 1969. On June 4, 1969, the jury found the defendant guilty of two counts of robbery and returned a special verdict that the defendant was armed with a deadly

weapon at the time of the commission of the offenses. On June 13, 1969, the defendant received sentences of 20 years on each of the two counts which were directed to run concurrently.

From this chronology of events it can be concluded that every continuance was for good cause, and every delay was acquiesced in or caused by the defendant.

The right to a speedy trial is guaranteed by the Washington State Constitution, article 1, section 22 (amendment 10) and by the sixth amendment to the United States Constitution. The Washington constitutional provision is implemented by RCW 10.46.010, which provides that unless a defendant is brought to trial within 60 days after an information is filed, the information shall be dismissed except where the trial has been postponed upon the defendant's own application or where there is good cause shown why it should not be dismissed. It should be noted, however, that the 60-day rule serves little purpose in felony cases, since after a dismissal the state may immediately file a new information charging the same or a related offense, but as we stated in *State v. McEvers*, 76 Wn.2d 34, 454 P.2d 832 (1969), it does show what the legislature considers the elapsed time should be for a speedy trial.

A mere lapse of time is not sufficient to warrant the conclusion that there has been a denial of a speedy trial. *State v. Alter*, 67 Wn.2d 111, 406 P.2d 765 (1965). What is a speedy trial must be determined in the light of the circumstances of each particular case as a matter of judicial discretion. *State ex rel. Orcutt v. Simpson*, 125 Wash. 665, 216 P. 874 (1923); 5 R. Anderson, Wharton's Criminal Law and Procedure § 1912 note 2 (Supp. 1971).

The right of a speedy trial protects the defendant only against arbitrary, oppressive, vexatious or prejudicial delays which engender an unfair trial. *State v. Brewer*, 73 Wn.2d 58, 436 P.2d 473 (1968). Even though an accused is guaranteed the right of a speedy trial, the guaranty is directed at delays in a prosecution to which he has not contributed. An accused is not entitled to a dismissal where

he has delayed the trial by his own acts or failure to act, and cannot take advantage of the delay occasioned by motions instituted by him or his failure to appear for trial. *State v. Jestes*, 75 Wn.2d 47, 448 P.2d 917 (1968); *State ex rel. James v. Superior Court*, 32 Wn.2d 451, 202 P.2d 250 (1949); *State v. Rose*, 145 Wash. 634, 261 P. 391 (1927); 22A C.J.S. *Criminal Law* §§ 471-472(2), at 47-60 (1961).

Since the delays in the trial of this case were for good cause, were either acquiesced in or caused by the defendant, and were not arbitrary, oppressive, vexatious or prejudicial, we are satisfied that in accordance with the above rules as applied to the instant case the defendant was not denied the right to a speedy trial.

The defendant makes several contentions in his supplemental brief submitted pro se which we will now discuss.

He first contends that he was deprived of a fair and impartial trial on the ground that the descriptions given to the police shortly after the robbery were not totally accurate descriptions of the defendant, and that the trial court therefore erred by failing to direct a verdict of "Not guilty" on the basis of lack of veracity of the witnesses.

The defendant points out that Mrs. Constance Hagen, one of the robbery victims, had initially described one of the robbers to the police as having brown eyes, when in fact the defendant's eyes are blue. However, the record shows that Mrs. Hagen identified the defendant shortly after the robbery, from photographs, as being one of the robbers, and made a positive in-court identification of the defendant. The witness' explanation at trial for the discrepancy in the description initially given to the police was "I was shook up, I guess." The defendant further points out a discrepancy in the height and weight description initially given to the police by Lorentz Lorentzen, prior to his in-court positive identification of the defendant.

These discrepancies were clearly before the jury, and go to the weight rather than the admissibility of the witnesses' testimony. The trial court did not err by leaving the question of veracity of the witnesses to the jury, since

the credibility of witnesses and the weight to be given their testimony is for the jury to determine. *Cox v. Charles Wright Academy, Inc.,* 70 Wn.2d 173, 422 P.2d 515 (1967); *Richards v. Sicks' Rainier Brewing Co.,* 64 Wn.2d 357, 391 P.2d 960, 2 A.L.R.3d 430 (1964); *Case v. Peterson,* 17 Wn.2d 523, 136 P.2d 192 (1943).

The next contention of the defendant is that he was deprived of a fair trial on the ground that certain testimony against him at trial was inaccurate. The defendant asserts that Mrs. Hagen testified at trial that the second robber was a man who moved like a cat, when in fact he was not. This description does not appear in the record. Even if such testimony had been presented, the matter of veracity is an issue for the jury, and again it is within the province of the jury to give the witness' testimony such weight as in its judgment it is entitled.

The defendant also contends that there was some form of collusion among the state's witnesses in identifying the defendant as one of the robbers. This contention is completely outside the record and is in no way substantiated.

The defendant contends that reversible error was committed when a juror stated during voir dire examination that she would require proof of the defendant's innocence to find him "Not guilty" and the trial judge denied a challenge of this juror for cause with the admonition "Your answer to that question should have been, 'No' . . ." There is no record of this occurrence before us, nor does the state have any memory of this happening. However, assuming this did occur, in addition to the judge's oral admonition in explanation of the law, the record shows that the jurors took an oath to follow the instructions in the case. Instruction No. 5 was as follows:

> The fact that an information has been filed in this case constitutes no evidence of guilt.
>
> The defendant is presumed innocent unless this presumption is overcome by proof establishing guilt beyond a reasonable doubt.
>
> A reasonable doubt is a doubt for which a sensible

reason can be given. It may arise from the evidence or lack of evidence.

In the absence of any evidence in this case to the contrary, we believe that this instruction clarified any misunderstanding on the part of the jury as to the law and cured any possible error.

The defendant next contends that he was denied a fair trial since Sergeant Stansbury of the Seattle Police Department sat in view of the jury with paper bags that had the defendant's name on them, whereas the contents of the bags were refused in evidence. The record shows the jury received a full explanation of the contents and purpose of the paper bags by the following colloquy which occurred in the full hearing of the jury:

> MISS HARBER: Your Honor, I expected to have another officer here at this time. Perhaps if I had a few minutes, I could locate him. THE COURT: What is his testimony? MISS HARBER: His testimony would be simply as to picking up various items and sending them in for fingerprint comparison, which was never made. THE COURT: There is no fingerprint evidence, then, so I wouldn't hold up the trial for that kind of evidence. MISS HARBER: Certain items were picked up at the tavern. The first item would be State's Exhibit 11, the cash box, and State's Exhibit Number 12, the cash drawer. I would offer them. MR. OPENDACK: I can't see the materiality. THE COURT: If they didn't find any fingerprints, what would that prove? I don't think I will allow them to be admitted. Miss HARBER: The State rests. THE COURT: The defendant may make his opening statement. MR. OPENDACK: The defendant rests. We rest, your Honor.

In view of the foregoing we can find no prejudice resulting to the defendant by the jury observing the paper bags with the defendant's name upon them.

Other contentions of the defendant made in his supplemental pro se brief relating to the manner in which his trial was conducted are frivolous and wholly without merit. We are satisfied that the defendant had a fair trial.

184

The judgment of guilty on both counts entered by the trial court upon the jury verdict is affirmed.

HAMILTON, C.J., FINLEY, ROSELLINI, HALE, NEILL, MC-GOVERN, STAFFORD, and WRIGHT, JJ., concur.