[No. 2079-1. Division One. November 5, 1973.]

THE STATE OF WASHINGTON, *Respondent*, v. MADISON WILSON, *Appellant*.

*John A. Strait,* for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Corydon J. Nelsen, Deputy,* for respondent.

JAMES, J.—Defendant Madison Wilson waived jury trial and was found guilty of possession of drugs in violation of the Uniform Controlled Substances Act, RCW 69.50. Wilson's principal contention on appeal is that his constitutional immunity from unreasonable search and seizure was violated.

Wilson first argues that the search warrant which was used as the vehicle for his apprehension was invalid because the affidavit upon which it was based fails to establish probable cause. The affidavit was made by a police officer who relied upon information provided by a "reliable" informant. Wilson's argument may be summarized as an assertion that a determination that probable cause exists cannot be based solely upon a hearsay statement of an informant, even though a police officer vouches for the informant's reliability.

*State v. Hodge,* 5 Wn. App. 639, 490 P.2d 126 (1971), considers a similar challenge to an affidavit which, in essential substance, is identical to the one challenged by Wilson. The opinion concludes that the affidavit, though based principally upon hearsay, nevertheless meets the "2-pronged test enunicated in *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964)." *State v. Hodge, supra* at 642. The test of *Aguilar* is stated as follows:

> Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, *Jones* v. *United States,* 362 U. S. 257

[4 L. Ed. 2d 697, 80 S. Ct. 725, 78 A.L.R.2d 233 (1960)], the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, . . . was "credible" or his information "reliable."

(Footnote omitted). *Aguilar v. Texas, supra* at 114.

The officer's affidavit relates that his informant had provided reliable information concerning violations of "state drug laws" on a number of occasions; that his informant is a user of heroin and familiar with the practices of dealers in drugs; that his informant was very recently in Wilson's apartment and saw Wilson sell heroin; and that Wilson indicated that he had additional heroin to sell.

As in *State v. Hodge, supra,* we conclude that the affidavit met *Aguilar's* test and established probable cause for the issuance of a search warrant.

Wilson further claims that the trial judge erred in restricting his cross-examination of the officer when he attempted "to elicit the extent of the information provided by the informant." The record discloses that Wilson was limited only to the extent necessary to preserve the anonymity of the informant.

The legitimate need of the police to preserve the anonymity of their informants is expressly recognized in *McCray v. Illinois,* 386 U.S. 300, 308, 18 L. Ed. 2d 62, 87 S. Ct. 1056 (1966). The right of the police to preserve such anonymity is characterized as "well-established testimonial privilege, long familiar to the law of evidence."

The legitimate objective of cross-examination of an officer who relies upon an informant is a determination of whether the officer was justified in his reliance and thus has probable cause to believe that a search will produce incriminating evidence. A trial judge must necessarily exercise discretion in limiting cross-examination when the need to preserve anonymity is asserted. Our review of the record reveals no reason to conclude that the trial judge

abused his discretion. *Accord, State v. Woods,* 5 Wn. App. 399, 487 P.2d 624 (1971).

Wilson's principal claim of error is that, "[a]ssuming the validity of the search warrant, the officers failed to meet the dictates of the Fourth Amendment and RCW 10.31.040 in serving the warrant." He argues that his motion to suppress should have been granted by the trial judge because the evidence seized "was obtained as a result of an inadequately announced and uninvited entry into a private home with no refusal or evidence of exigent circumstance shown to justify failure to comply with" the constitutional and statutory prohibitions against unreasonable search and seizure.[1]

Understandably the evidence concerning the mode of entry was substantially provided by the testimony of the officers who participated in the search. The two officers who testified were in agreement that five officers went to Wilson's apartment shortly after 1 a.m. They had been given a description of the floor plan of Wilson's apartment by their informant and knew that the apartment's two bedrooms and bathroom were on the second floor. The informant had not told them where Wilson kept the drugs which he had for sale, but had said that it was likely that they would be found in one of the bedrooms. He also reported that Wilson's heroin was packaged in easily disposable balloons. Two other informants had previously reported that Wilson was selling narcotics in his apartment. The officers testified that at least two informants had told them that Wilson was armed with a pistol and that he kept other firearms in his apartment.

---

[1]"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, . . ." U.S. Const. amend. 4.

"No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Const. art. 1, § 7.

"To make an arrest in criminal actions, the officer may break open any outer or inner door, or windows of a dwelling house or other building, or any other inclosure, if, after notice of his office and purpose, he be refused admittance." RCW 10.31.040.

When the officers arrived at the apartment, they observed that an upstairs light was turned on and they could hear "a stereo or a radio playing." The sergeant in command of the group went immediately to the front door and knocked loudly with the butt of his fist and announced, "loud enough to be heard," that police officers were present with a warrant. After a wait of approximately 10 seconds, the door was forced open by the sergeant, and the officers entered. Two of the officers went immediately up the stairs where they saw Wilson standing in one of the bedrooms. In his left hand Wilson held a "handful of money" and some keys, and in his right hand he held a .38 caliber pistol. Upon the officers' command, he dropped the money and keys to the floor and the pistol to a chair before raising his hands. One of the keys was used to unlock a padlocked trunk which was found in a bedroom closet. The trunk contained a substantial quantity of heroin packaged in $\frac{1}{4}$-inch balloons.

The pistol which Wilson dropped to the chair was found to be loaded. Another loaded pistol was found under a pillow on the bed. An unloaded .45 caliber revolver was found in the trunk, and a loaded 12-gauge shotgun was found behind the bedroom door.

The officers testified that they believed that the sergeant's knock and announcement were loud enough to be heard by the occupants of the apartment, and that, knowing of Wilson's background, they feared that if they waited any longer before entering, their lives would be endangered. The officers knew that Wilson had several narcotic convictions, had served time in the McNeil and Leavenworth penitentiaries, and was known to federal narcotic officers as "Gangster Mack."

Wilson testified that there was "no music playing" and that he heard no knock or announcement. He said that his first warning of the officers' intrusion was the "crash" when the door was forcibly opened.

The trial judge concluded "[t]hat the manner of execution of the search warrant was reasonable under the cir-

cumstances in that it was necessary for the officers to move rapidly to protect themselves and to insure that the evidence was not destroyed." Conclusion of law No. 3.

> In his oral opinion the trial judge stated that he was convinced that the officers, under the circumstances, taking into account that they were aware of the defendant's past record, they had been informed that he was armed, certainly most reasonably in their own protection could have found it necessary to protect themselves to move rapidly. And I find that the service falls directly within the case of State v. Young, that the method of service was reasonable under the circumstances, and that their entry, as described by the two officers, was justified.

In *State v. Young*, 76 Wn.2d 212, 217, 455 P.2d 595 (1969), the Washington Supreme Court held that "strict compliance with a 'knock and wait' rule in the execution of search warrants, no matter what the circumstances, would hamper the orderly enforcement of criminal law," and that "when officers come armed with a valid search warrant, forcible entry without announcement of identity and purpose and a demand for admittance *may* be justified when exigent and necessitous circumstances exist, as in the instant case."

In *Young*, the "exigent and necessitous" circumstances which justified the forcible entry were the unambiguous sounds from within the premises which could only mean that a destruction of evidence was in progress. In this case, the state urges that an unannounced forcible entry was justified by reason of the officers' belief that, if warned, Wilson, an experienced and professional drug dealer, would quickly dispose of his narcotics by flushing them down the toilet, and by reason of their concern for their own safety in view of their knowledge that Wilson, a convicted felon, was armed.

In *State v. Hatcher*, 3 Wn. App. 441, 475 P.2d 802 (1970), we rejected the state's invitation to approve a blanket no-knock search policy for narcotics cases. But in doing so, we recognized that the concern of the police ·is not frivolous.

*Accord, State v. Singleton,* 9 Wn. App. 399, 512 P.2d 1119 (1973). Rather, we held that such a circumstance was not, in itself, sufficient to override a fundamental right which an unreasonable search would violate.

We are here required to consider whether the officers' asserted concern for their own safety is an added circumstance which, together with their concern that the evidence would be destroyed, reasonably justified their forcible entry. As was pointed out in *State v. Young, supra* at 214, in *Ker v. California,* 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963), the Supreme Court first held that the constitution's guarantee of security against unreasonable searches and seizures required an announcement of identity and statement of purpose prior to a forcible entry. *Young* further points out that rather than draft comprehensive rules, the court opted to permit the states "to administer a 'standard of reasonableness.'" *State v. Young, supra* at 214.

> We reiterate that the reasonableness of a search is in the first instance a substantive determination to be made by the trial court from the facts and circumstances of the case and in the light of the "fundamental criteria" laid down by the Fourth Amendment and in opinions of this Court applying that Amendment. Findings of reasonableness, of course, are respected only insofar as consistent with federal constitutional guarantees.

*Ker v. California, supra* at 33. In this case the trial judge made a substantive determination that the forcible entry was reasonable. Necessarily inherent in his determination was his conclusion that the officers were genuinely and reasonably apprehensive for their own safety. Such a determination requires an assessment of credibility and is therefore one for which the trial judge is uniquely qualified.

We are aware of Justice Brennan's observation in *Miller v. United States,* 357 U.S. 301, 313 n.12, 2 L. Ed. 2d 1332, 78 S. Ct. 1190 (1958), that notice "is also a safeguard for the police themselves who might be mistaken for prowlers and be shot down by a fearful householder." In a given situation, Justice Brennan's postulation might well be true. But

we are persuaded that the better rule would permit the trial judge to evaluate the officer's claimed need to rely upon the element of surprise on a case-by-case basis.

> Even the Justices who disagreed with the result in Ker v. State of California agreed that some exceptions to the rule of prior announcement are to be recognized. 374 U.S. at 54-65, 83 S.Ct. 1623. This much admitted, it would be difficult to justify refusal to excuse prior announcement where to require it would create palpable peril to the life or limb of the arresting officers.

*Gilbert v. United States,* 366 F.2d 923, 932 (9th Cir. 1966). *Accord, United States v. McShane,* 462 F.2d 5 (9th Cir. 1972); *United States v. Smith,* 456 F.2d 1236 (9th Cir. 1972); *People v. Dumas,* 9 Cal. 3d 871, 512 P.2d 1208 (1973).

The trial judge chose to believe the officers. Their testimony constitutes substantial evidence to support a finding that exigent and necessitous circumstances justified a forcible no-knock entry.

Finally, Wilson claims that the trial judge erred in denying his motion to dismiss on the grounds of "insufficiency of the evidence." His argument in its entirety is as follows:

> Possession had to be proven by circumstantial evidence and by constructive possession in this case. Mere presence alone, without proof of knowledge of the contraband is insufficient. *State v. Callahan,* 77 Wn.2d 27 (1969).

Substantial evidence, both direct and circumstantial, established Wilson's constructive possession of heroin in violation of the Uniform Controlled Substances Act. *State v. Emerson,* 5 Wn. App. 630, 489 P.2d 1138 (1971).

Affirmed.

HOROWITZ, J., and WALTERSKIRCHEN, J. Pro Tem., concur.

Petition for rehearing denied December 20, 1973.

Review denied by Supreme Court February 20, 1974.