[No. 1246-2.    Division Two.    December 13, 1974.]

THE STATE OF WASHINGTON, *Respondent,* v. PATRICK
DEWILDE *et al., Appellants.*

*William H. Fraser,* for appellants.

*John C. Merkel, Prosecuting Attorney,* and *C. Danny Clem, Deputy,* for respondent.

PEARSON, C.J.—In this case defendants Patrick and Susan DeWilde, husband and wife, appeal from a conviction of grand larceny by possession of stolen property.

The principal issue on appeal is whether or not the failure of the prosecuting attorney to disclose to defendants the existence of a recorded statement taken by the prosecutor from the victim, a key prosecution witness, constituted reversible error, when the statement implicated the witness in a similar but unrelated crime to the one charged against defendants. We hold that it was error and a violation of CrR 4.7 to withhold the statement from the defendants, but that under the circumstances of this case the error was harmless.

Both convictions arose out of an incident which began

February 26, 1973. On that date Robert White reported a burglary of his trailer home located in the Gig Harbor area. The trailer house had been forcibly entered while White and his wife were at work, and the bulk of the furnishings had been removed. White's truck, which had been parked on the premises, was recovered after having been hidden in the woods a short distance from White's residence. The windows and side mirrors had been broken, and the truck had been pushed off an embankment. After White informed responding officers of the Pierce County sheriff's office that he believed the burglary had been committed by a suspect with whom he worked, Michael DeWilde, and the suspect's brother, defendant Patrick DeWilde, a complex investigation ensued which involved both the Pierce and Kitsap County sheriff's offices. The investigation culminated in numerous criminal charges involving several other individuals, all of whom were at least casual acquaintances.

The primary theory of defense presented to the jury by defendants Patrick and Susan DeWilde was that no larceny of Robert White had in fact taken place, but that White had simply had his possessions removed from his residence, so that he could file a fraudulent insurance claim alleging a theft loss. For example, White admitted in his testimony that he had previously participated in such a scheme. He testified that in September of 1971, the defendant's brother, Michael DeWilde, paid him $500 for various possessions which he surreptitiously removed from White's residence. White then filed a false claim of theft loss with his insurance company. He received $3,500 from the company, the maximum amount of coverage.

Although White candidly admitted the above fraud on cross-examination, defendants contend that they were precluded from adequately pursuing their theory of defense by the failure of the prosecutor, during criminal discovery proceedings, to turn over to them a 14-page written statement of the victim, Robert White. The statement was taken by the prosecutor on June 21, 1973, prior to defendants' trial, but in connection with a pending investigation of

Michael DeWilde, brother of the defendant husband. In this statement White admitted participating in another similar insurance fraud with Michael DeWilde, in addition to the fraud to which he testified. The defendants allege that had the existence of this statement been disclosed to them prior to trial, and the contents passed on to the jury, the further impeachment would probably have resulted in an acquittal.

This second fraudulent insurance claim, described in White's statement, took place in March of 1972. According to this statement, Michael DeWilde, with the help of his brother Patrick, brought everything that he had in his garage over to White's residence and stored the items, primarily expensive tools, in White's garage. Two or three days later, Michael DeWilde drove to California to establish an alibi for the time when his residence was to be "robbed." He next flew to Portland, Oregon, presumably under a false name, where he was picked up by White and driven back to Tacoma. In the middle of the night, DeWilde returned to his home and made it appear to neighbors that someone had driven off during the night with all the possessions in his garage. DeWilde then took a bus back to Portland and made a return flight to California. Two or three months later Michael DeWilde received an insurance settlement of over $8,000. Largely because of White's statement describing the above events, Michael DeWilde was charged with and entered a plea of guilty to willful secretion of property, presenting a false claim form, and grand larceny by trick.

It is undisputed that White's statement was taken by a deputy prosecuting attorney in connection with an investigation of criminal activity participated in by Michael DeWilde. However, Patrick and Susan DeWilde contend that it was error for the same deputy prosecuting attorney to fail to disclose the existence of this witness' statement to them prior to their trial, in accordance with Superior Court Criminal Rule 4.7. We agree that the deputy prosecuting attorney erred.

Criminal rule 4.7 provides, in relevant part, as follows:

**(a) Prosecutor's Obligations.**

(1) Except as otherwise provided by protective orders or as to matters not subject to disclosure, the prosecuting attorney shall disclose to the defendant the following material and information within his possession or control

. . .

(i) the names and addresses of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial, *together with any written or recorded statements* and the substance of any oral statements of such witnesses;

CrR 4.7(a)(1)(i). (Italics ours.) The prosecution contends that it is under no affirmative duty to disclose statements made by witnesses in regard to "unrelated" cases unless the evidence is favorable to the accused and material either to guilt or to punishment. *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963); CrR 4.7(a)(3).[1] Accordingly, the State contends that CrR 4.7(a)(1)(i), *supra*, is or should be limited to encompass only witnesses' statements made concerning the hearing or trial in which they are called to testify.

In light of the express language of the provision, such a limiting construction is untenable. The rule directs the prosecuting attorney to disclose to the defendant *any written or recorded statements* made by a person whom the prosecuting attorney intends to call as a witness. This rule was proposed to the Supreme Court by the Criminal Rules Task Force to the Washington Judicial Council, and was adopted as proposed on April 18, 1973. The source of the rule was the approved draft of the American Bar Association's Standards Relating to *Discovery and Procedure Before Trial*. The ABA provision provided in part as follows:

2.1 Prosecutor's obligations.

---

[1]CrR 4.7(a)(3) provides:

"Except as is otherwise provided as to protective orders, the prosecuting attorney shall disclose to defendant's counsel any material or information within his knowledge which tends to negate defendant's guilt as to the offense charged."

(a) Except as is otherwise provided as to matters not subject to disclosure (section 2.6) and protective orders (section 4.4), the prosecuting attorney shall disclose to defense counsel the following material and information within his possession or control:

(i) the names and addresses of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial, together with their *relevant written or recorded statements*; . . .

(Italics ours.) ABA Standards, *Discovery and Procedure Before Trial* § 2.1, at 52 (Approved Draft, 1970).

Comparing the ABA provision, which only requires disclosure of *relevant* written or recorded statements, to the modified version adopted by the Supreme Court, which requires disclosure of *any* written or recorded statements of a witness, dispels any notion that the disclosure required by the rule adopted in Washington was intended to be limited, as suggested by the prosecution in this case. It is clear that the rule adopted in this state does not allow a prosecuting attorney to withhold any witness' statements on grounds that the statements are either irrelevant or, in the opinion of the prosecutor, "unrelated" to the case in which the witness will be called.

The prosecution argues that a failure to limit the scope of CrR 4.7(a)(1)(i) to witnesses' statements made concerning the hearing or trial in which they are called to testify will raise the "specter" of prosecutors combing through their voluminous files to find statements possibly useful to the defense. The contention is that it should not be incumbent upon the prosecutor to go beyond the "file" on the particular case against the defendants. We disagree. A specter of far greater dimensions than that invoked by the prosecutor in this case would be raised by the adoption of a rule for criminal discovery which determined what statements must be disclosed upon the vagaries of each prosecutor's filing system.

It is clear that the prosecuting attorney's obligation under CrR 4.7(a)(4) extends to material and information within the knowledge, possession, or control of members of

his staff.[2] The prosecutor must, therefore, ensure that the flow of information within the prosecuting attorney's office is sufficient so that the required disclosures may be made of *any* written or recorded statements of a person intended to be called as a witness.

■ Although our holding must be that the deputy prosecuting attorney erred when he failed to disclose the existence of the statement which he had himself previously taken, such a holding does not end the inquiry. It is only where the error has been prejudicial to the accused that the error will be said to require reversal. *State v. Rogers*, 83 Wn.2d 553, 557, 520 P.2d 159 (1974). An error is not deemed prejudicial where the court is able to determine that the average juror would not have found the prosecutor's case significantly less persuasive had the error not occurred. *Schneble v. Florida*, 405 U.S. 427, 31 L. Ed. 2d 340, 92 S. Ct. 1056 (1972); *State v. Odom*, 83 Wn.2d 541, 520 P.2d 152 (1974).

In this case several factors compel us to the belief that the outcome of the trial would not have been affected had the prosecutor disclosed the fact that White's written statement was on file. In the first place, the defense had access to the relevant information in the statement, *i.e.*, that White had participated in a second insurance fraud with Michael DeWilde, through at least two other sources. For example, according to White's statement, one of the defendants himself, Patrick DeWilde, also participated in the same insurance fraud, by helping his brother transport the reportedly stolen items from Michael DeWilde's garage to White's residence. Under these circumstances the disclosure of the statement by the prosecution would be giving the defendants nothing new.

Access to this information might also have been obtained through the primary perpetrator of the fraud, Michael

---

[2]CrR 4.7(a)(4) provides:

"The prosecuting attorney's obligation under this section is limited to material and information within the knowledge, possession or control of members of his staff."

DeWilde. For instance, by the time trial commenced against the defendants herein, several criminal charges in connection with the 1972 insurance fraud had been filed against Michael DeWilde, who was being represented by the same counsel as the defendants in this case. One of the charges was willful secretion of property, and it should be recalled that White, in his statement, related that Michael DeWilde had secreted in White's garage, with White's consent, the goods which he reported stolen. Under these circumstances, counsel for the defendants in this case had ready access to the fact of White's complicity in this second insurance fraud.

It was a similar ready access to the equivalent of information not disclosed by the prosecution during discovery that weighed heavily in this court's affirmance of a rape conviction in *State v. Krausse*, 10 Wn. App. 574, 576, 519 P.2d 266 (1974).

Moreover, even if we assume that the information was unavailable to the defendants, absent disclosure by the prosecuting attorney, and further assume that the evidence of White's prior misconduct would have been admissible for impeachment purposes, we are of the opinion that in the mind of the average juror, the prosecution's case would not have been rendered significantly less persuasive by the disclosure of the incident.

As previously indicated, the defense theory was that White's goods had not been stolen, but had been removed in preparation for an insurance fraud. White had already admitted on cross-examination that he had in fact perpetrated just such a crime in 1971. While evidence of White's complicity in a subsequent similar crime in which Michael DeWilde filed the false claim might further the defense theory somewhat, it is difficult to see what more than White's on-the-stand admission of his prior crime the defendants needed to make their point. The jury was clearly informed that White might be lying in regard to his claim of a theft from his residence, as he had admittedly done in

the past. In this sense the omitted evidence can be categorized as cumulative in nature.

On the other hand, the evidence of Michael DeWilde's fraud, as described in White's statement, has a double-edged effect. This statement inculpated both White and the defendant Patrick DeWilde in the Michael DeWilde incident. In this sense the impeaching value to be gained by the trial use of White's statement would have been offset by its prejudicial effect against Patrick DeWilde. The evidence, of course, would have had no effect on the credibility of the remainder of the State's witnesses, some of whom testified as to defendants' possession of White's property, as well as to several admissions by the defendants of involvement in the removal of White's property from his residence without his knowledge or consent.

Based upon our review of the entire record in this case, our holding is that had the prosecution not erred, within all reasonable probabilities the result of this trial would have been the same. The error was not prejudicial error. *State v. Rogers, supra.*

One final issue remains for determination. Counsel for defendants has complained in this appeal, for the first time throughout these proceedings, that a statement in a police report concerning the victim White's reputation was illegible on a copy of the report which was furnished to the defendants by the prosecution prior to trial. This assignment of error is frivolous because of the obvious waiver of any right to object to the allegedly defective copy. *State v. Van Auken,* 77 Wn.2d 136, 460 P.2d 277 (1969).

Judgment affirmed.

ARMSTRONG and PETRIE, JJ., concur.